UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEONARD MCQUAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00149-JRS-MG |
| | ) |
| RICHARD BROWN, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Granting Motion for Partial Summary Judgment**

Plaintiff Leonard McQuay, an inmate at Wabash Valley Correctional Facility ("WVCF"), brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging, among other things, that defendant Warden Richard Brown violated his First Amendment rights by keeping him in the Restricted Movement Unit ("RMU") and not permitting him to attend group religious services. Warden Brown argues that he is entitled to summary judgment based on qualified immunity from Mr. McQuay's claims because Mr. McQuay's placement in the RMU was based on legitimate penological interests. For the following reasons, the motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II. Facts

Mr. McQuay is a Sunni Muslim. Dkt. 99-1 at 10 (McQuay Dep. at 18:14-15). Before he was placed in the RMU, Mr. McQuay attended religious services every Friday. *Id.* at 10 (McQuay Dep. at 18:4-9). The Friday services consisted of a worship service (Jumah) and a study meeting (Taleem). *Id.* at 10-11 (McQuay Dep. at 18:25-19:17). Mr. McQuay also attended a religious library meeting, held once per month, at which inmates could study and watch videos about Islam in the chapel. *Id.* at 12 (McQuay Dep. at 19:23-20:13).

Mr. McQuay was admitted to the RMU at WVCF in September of 2018. Dkt. 2 at 9, 11; dkt. 99-1 at 5, 8-9 (McQuay Dep. at 13:8-13, 16:20-17:10). The form requesting admittance to RMU stated:

> Reason for Requested Admittance to Restricted Movement Housing: <u>Recent intelligence gained from various sources, both in person and using available technology, have indicated this offender is quite possibly involved in using one or more avenues of gaining access to contraband which jeopardizes safety and security of the institution and everyone within.</u>

Dkt. 99-2.

Group religious services were not available to Mr. McQuay in the RMU. *Id.* at 15 (McQuay Dep. at 27:16-18). But Mr. McQuay did daily prayers—five times per day—in his cell. *Id.* at 19 (McQuay Dep. at 31:20-25). He also had access to religious texts, religious artifacts, and prayer rugs. *Id.* at 20-21 (McQuay Dep. at 32:18-33:4). There was no limit on what religious materials Mr. McQuay could have. *Id.* at 22 (McQuay Dep. at 34:4-13). And there is an Islamic chaplain who visits the facility, but Mr. McQuay doesn't think he made any requests while he was in the RMU to see him. *Id.* at 30-31 (McQuay Dep. at 42:17-43:5).

Mr. McQuay met with his prison counselor and Warden Brown in early September 2018 to discuss his placement in the RMU and the denial of access to religious services. *Id.* at 23-24

(McQuay Dep. at 35:5-36:13). At that meeting, Warden Brown told Mr. McQuay that he needed to discuss the reasons for the placement with correctional staff. *Id.* at 23 (McQuay Dep. at 35:16-18). Mr. McQuay spoke with Warden Brown again in about October 2018 about potentially being transferred out of the RMU, and Warden Brown directed the counselor "to look into the whole situation about [Mr. McQuay] getting out of RMU." *Id.* at 25-26 (McQuay Dep. at 37:6-38:13). On November 14, 2018, Warden Brown emailed facility staff asking if there was any specific reason to keep Mr. McQuay in the RMU other than "we had heard he was running the wing and controlling showings/phones/J-pay in the past." Dkt. 99-3. Assistant Warden Frank Littlejohn responded, stating:

> I have no specific reason to keep him in RMU. He will always have the demeanor to have some control over any wing that he is ever placed in just based on his overwhelming personality, size, crime he committed and STG/religious affiliation. As long as he isn't using his influence in an aggressive way to influence others to be assaultive then I don't that we can justify RMU forever…

*Id.* Mr. McQuay's release from the RMU was approved on November 19, 2018. Dkt. 99-4.

### III. Discussion

Warden Brown seeks summary judgment arguing that he is entitled to qualified immunity on Mr. McQuay's claim.

Qualified immunity shields a state official from liability unless the plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). To avoid "[u]nnecessary litigation of constitutional issues" and expending scarce judicial resources that ultimately do not impact the outcome of the case, the Court may analyze the "clearly established" prong without first considering whether the alleged constitutional right was violated. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009).

Warden Brown argues that placing Mr. McQuay in the RMU where he was not allowed to attend group religious services did not violate his clearly established First Amendment rights because his placement there was temporary and was based on legitimate penological reasons. Indeed, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination relies on the following factors:

> (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question; (3) what impact accommodation of the asserted constitutional right would have on guards, other inmates, and on the allocation of prison resources; and (4) what easy alternatives exist to the regulation because, although the regulation need not satisfy a least restrictive alternative test, the existence of obvious alternatives may be evidence that the regulation is not reasonable.

*Kemp v. Liebel*, 877 F.3d 346, 353 n.5 (7th Cir. 2017). But this test does not "create clearly established law outside an obvious case." *Id.* at 353.

Here, when Mr. McQuay was placed in the RMU and denied access to group religious services, it was not clearly established that this action would violate his First Amendment rights. "It has never been clearly established that inmates have a right to inmate-led group worship under the First Amendment," and prison officials do not violate the First Amendment when they deny inmate-led group worship for security reasons. *West v. Grams*, 607 F. App'x 561, 565 (7th Cir. 2015). Here, Warden Brown has explained that placing Mr. McQuay in the RMU and thereby restricting his movement—including excluding him from group religious services—was based on the suspicion that Mr. McQuay was involved in trafficking contraband. *See* dkt. 99-2. Prevention of trafficking contraband is certainly a legitimate security objective. And there is no evidence that Warden Brown unreasonably relied on the report that Mr. McQuay was suspected of participating in trafficking or that he failed to investigate Mr. McQuay's complaints about his placement. Thus,

a reasonable prison official in Warden Brown's position would not have known that he was violating clearly established law when excluding Mr. McQuay from group religious services because of suspicions that he was trafficking contraband. Warden Brown is therefore entitled to qualified immunity on Mr. McQuay's claim.

### IV. Conclusion

Warden Brown's motion for partial summary judgment, dkt. [98], is **granted**. The claims against Richard Brown are dismissed, and the **clerk shall terminate** Warden Brown as a defendant on the docket.

No partial final judgment shall issue as to this claim. The claims against the remaining defendants shall proceed to a settlement conference or trial if one is necessary. The Court is currently attempting to recruit counsel to represent Mr. McQuay for these purposes. The Court will notify the parties when that step is complete and will direct further proceedings at that time.

**IT IS SO ORDERED.**

Date: 7/20/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LEONARD MCQUAY
874304
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel